IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Gusto Packing Co., Inc., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 08CV3208 |
| v. | ) ) | |
| Tyson Foods, Inc., a Delaware Corporation, | ) ) ) ) | Magistrate Judge Nolan |
| Defendant. | ) ) | |
| Tyson Foods, Inc., a Delaware Corporation, | ) ) ) | |
| Counter-plaintiff, | ) ) ) | |
| v. | ) ) | |
| Gusto Packing Co., Inc., an Illinois Corporation, | ) ) ) ) | |
| Counter-Defendant. | ) ) | |

**DEFENDANT'S ANSWER TO AMENDED COMPLAINT
AND AFFIRMATIVE DEFENSES**

Defendant Tyson Foods, Inc. ("Tyson") submits the following Answer and Affirmative Defenses to the First Amended Complaint of Plaintiff Gusto Packing Co., Inc. ("Plaintiff"):

## I.   THE PARTIES

1.      Gusto is a corporation of the State of Illinois with its principal place of business at 2125 Rochester Drive, Montgomery Illinois 60538, in this judicial district.

**ANSWER:** Tyson is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

2. Upon information and belief, Tyson is a corporation of the State of Delaware and has its principal place of business at 2210 West Oaklawn Drive, Springdale, Arkansas 72764, at least one place of business in the City of Chicago, and other places of business in this District.

**ANSWER:** Tyson admits that it is a corporation of the State of Delaware, that its principal place of business is at 2210 West Oaklawn Drive, Springdale, Arkansas 72764, and that it operates a facility in Chicago. Tyson denies the remaining allegations of this paragraph.

## II.    JURISDICTION AND VENUE

3. This is a complaint for Trademark Infringement, Unfair Competition, and False Description arising under §§32 and 43 of the Lanham Act, 15 U.S.C. §§1114(1) (Trademark Infringement) and §1125(a) and common law as well as violation of the Illinois Deceptive Trade Practices Act 815 I.L.C.S. 510.

**ANSWER:** Tyson admits that the Amended Complaint alleges Trademark Infringement, Unfair Competition, and False Description arising under §§32 and 43 of the Lanham Act, 15 U.S.C. §§1114(1) (Trademark Infringement) and §1125(a) and common law as well as violation of the Illinois Deceptive Trade Practices Act 815 I.L.C.S. 510.

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338 and 1367.

**ANSWER:** Admitted.

5. This Court has personal jurisdiction over the Defendant Tyson because of Tyson's maintenance of a place of business in Chicago and elsewhere in this District, Tyson's offer for sale and sale of infringing products and/or other products, directly or through others, into and in this jurisdiction with the expectation that they will be purchased and used by Illinois consumers in this district, and on information and belief, because Defendant derives substantial revenue from its products sold in this district.

**ANSWER:** Tyson admits that this Court has personal jurisdiction over it. Tyson denies the remaining allegations of this paragraph.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that Tyson has a place of business in this District, Tyson has been conducting business in this District.

**ANSWER:**   Tyson admits that venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c). Tyson denies the remaining allegations of this paragraph.

### III.   FACTUAL BACKGROUND

7.   Ralph Caballero, Sr. began the business of Plaintiff Gusto in 1972 as a processor of pork, such as hams, poultry and other meat products. The business was incorporated in 1974 under the name Gusto Packing Co., Inc. Gusto is certified as a Minority Business Enterprise, being 100% Hispanic owned (Exhibit E Page 11 of 32). From its inception, the Hispanic market was the primary portion of Gusto's business and the Hispanic market is still a substantial portion of Gusto's business (see one of Gusto's labels presented in Spanish and English, Exhibit E Page 24 of 32, which is one of numerous Spanish and English labels that Gusto uses, and Exhibit E Page 5 of 32). Gusto presently employs 300 people in its meat packing and distribution business.

**ANSWER:** Tyson is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

8.   Gusto is a USDA licensed processor of pork and poultry (Exhibit E Page 12 to 14 of 32), and, since at least as early as 1972, has used the trademark "GUSTO," to identify its products to its customers by marking its products with the trademark "GUSTO" in various forms and with various other words and design elements, and has, since August 1991, sold these marked products in interstate commerce.

**ANSWER:** Tyson is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

9.   On March 29, 1993, Gusto applied to register the mark "GUSTO and design" with the United States Patent and Trademark Office (the "PTO"), based on a first use in commerce of that particular logo form of the design mark of on or about August 1991. First use of the mark GUSTO in another form was identified as December, 1972. The PTO approved the application and issued Certificate of Registration No. 1,878,749 in International Class 029 on February 14, 1995. In July, 2000, §§ 8 and 15 declarations were filed, and subsequently accepted by the PTO, rendering the registration incontestable under 15 U.S.C. §1065. In February, 2005, an application for renewal of the registration was filed, subsequently approved in March, 2005 for an additional ten (10) year period. This form of the mark "GUSTO" has been used on all of the goods listed in the registration on a continuous basis from at least March, 1993 to the present. Registration No. 1,878,749 is valid and incontestable. A copy of the registration certificate is attached as Exhibit A.

**ANSWER:**    Tyson admits Exhibit A purports to be a copy of Certificate of Registration No. 1,878,749. Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

10.    To further identify some of its pork and other meat products to its customers, Gusto created and, on March 29, 1993, applied to register its "GUSTO'S HEARTLAND and design" mark with the PTO, based on a first use in commerce of that particular logo form of the design mark of on or about December 14, 1992. The PTO approved the application and issued Certificate of Registration No. 1,882,367 in International Class 029 on March 7, 1995. In July, 2000, §§ 8 and 15 declarations were filed, and subsequently accepted by the PTO, rendering the registration incontestable under 15 U.S.C. § 1065. In June, 2004, an application for renewal of the registration was filed, subsequently approved in August, 2004 for an additional ten (10) year period. This form of the mark "GUSTO" has been used on all of the goods listed in the registration on a continuous basis from at least March, 1993 to the present. Registration No. 1,882,367 is valid and incontestable. A copy of the registration certificate is attached as Exhibit B.

**ANSWER:** Tyson admits Exhibit B purports to be a copy of Certificate of Registration No. 1,882,367. Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

11.    To further identify some of its pork and other meat products to its customers, Gusto created and, on June 21, 2004, applied to register its "GUSTO'S HEARTLAND" mark with the PTO, based on a first use in commerce of this particular mark of on or about December 14, 1992. The PTO approved the application and issued Certificate of Registration No. 2,970,688 in International Class 029 on July 19, 2005. Registration No. 1,882,367 is valid and subsisting. A copy of the registration certificate is attached as Exhibit C.

**ANSWER:** Tyson admits Exhibit C purports to be a copy of Certificate of Registration No. 2,970,688. Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

12.    Continuously since about 1972, Gusto has used one or more of the marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" to identify its pork and other meat products, including turkey products, and to distinguish its products from those made and sold by others, by, among other things, prominently displaying the marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" on Gusto's goods, containers and displays associated therewith. A sample of the various uses of "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" made by

Gusto over the years is attached as Exhibit D. This use by Gusto has built substantial goodwill in all of the "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" trademarks throughout the United States. In addition, Gusto has prominently displayed those trademarks on websites, in direct mail advertising and advertising in periodicals distributed throughout the United States.

**ANSWER:** Tyson denies that Exhibit D is a sample of Plaintiff's purported use of "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND." Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

13. Since beginning in February, 1995, the public, including Tyson, has had at least constructive notice that Gusto's marks are registered in the U.S. Patent and Trademark Office (15 U.S.C. 1072).

**ANSWER:** Tyson denies the allegations of this paragraph to the extent they call for a legal conclusion to which no answer is necessary or implied.

14. Gusto and Tyson (including its divisions, IBP and Iowa Ham Canning), have had a long and substantial course of dealings, (Exhibit E) in that:

    a) Gusto currently and for many years has purchased from Tyson, and from companies now owned by Tyson, a substantial quantity of precuts which are fresh meats used as raw materials in Gusto's food processing business; and

**ANSWER:** Tyson admits that Plaintiff has purchased and currently purchases what Tyson refers to as primals and subprimals, which are fresh meats, from Tyson and companies now owned by Tyson. Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

    b) Gusto maintains a $2,000,000 line of credit with Tyson to purchase fresh meats; and

**ANSWER:** Admitted.

    c) Gusto receives Daily Account Status Statements from Tyson for fresh meats and these accounts are settled on a weekly basis by payments made via checks bearing Gusto's trademark (Exhibit E Page 31 of 32); and

**ANSWER:** Tyson admits that Plaintiff receives "Daily Account Status Statements" Monday through Friday from Tyson for fresh meats and that these accounts are settled approximately on a weekly basis by payments made via checks bearing the purported GUSTO & Design. Tyson further admits that Exhibit E (page 31 of 32) purports to be a copy of one of Plaintiff's checks. Tyson denies the remaining allegations in this paragraph.

    d)  Tyson, through a company now owned by Tyson, has produced private labeled GUSTO products for Gusto (Exhibit E Page 15 of 32); and Tyson holds itself out as a private label supplier to Gusto (Exhibit E Page 32 of 32); and

**ANSWER:** Tyson is without knowledge at this point as to the allegations of this paragraph and therefore denies the allegations of this paragraph.

    e)  Tyson has sold Gusto a significant quantity of processing equipment (Exhibit E Pages 16 and 17 of 32); and

**ANSWER:** Tyson admits that it has sold Plaintiff processing equipment. Tyson denies the remaining allegations in this paragraph.

    f)  Gusto competes with Tyson in the same line of business, namely the wholesale sale of processed meat products; and

**ANSWER:** Admitted.

    g)  Gusto and Tyson both display their goods and solicit orders at the same tradeshows (Exhibit E Page 1 of 32); and

**ANSWER:** Tyson admits that Exhibit E (page 1 of 32) purports to be a photograph from an unidentified trade show. Tyson further admits that it displays some of its products at trade shows. Tyson denies the remaining allegations in this paragraph.

    h)  Through this course of dealings, Tyson has actual knowledge that Gusto has established through registration and use tradename and trademark rights in and to the name Gusto and variations thereof as more fully described elsewhere herein, of significant and unique value that would be substantially diminished by infringement and customer confusion by use of

same or similar tradenames or trademarks by Tyson in the same line of business to compete for the same customers.

**ANSWER:** Denied.

15.     Since on or about 1993, one of Gusto's suppliers for various pork cuts and other raw meat materials has been IBP, Inc., (IBP).

**ANSWER:** Tyson admits since on or about 1993, IBP, Inc. has sold Plaintiff various pork cuts and other raw meat materials. Tyson denies the remaining allegations in this paragraph.

16.     On information and belief, in or around 2001, IBP was purchased by Tyson Foods. The president of IBP at the time was Richard L. Bond, and he is now the president of Tyson. On information and belief, Tyson employs approximately 114,000 people at 300 facilities and offices around the United States (including at least 4 locations in Illinois) and the world.

**ANSWER:**   Tyson admits that the President of IBP in 2001 was Richard Bond, and that Richard Bond is the current President and CEO of Tyson. Tyson further admits that it employs over 100,000 people and that it has facilities and/or offices across the United States, including in Illinois. Tyson denies the remaining allegations in this paragraph.

17.     Gusto, since the purchase of IBP by Tyson has continued to purchase various meat products directly from Tyson with annual purchases by Gusto from Tyson for 2006, 2007 and 2008 (YTD) averaging over $9,000,000 per year.

**ANSWER:** Admitted.

18.     A division of IBP acquired by Tyson was Iowa Ham Canning, USDA licensed pork processing establishment 5695, which has operated as a division of Tyson in Independence, Iowa. Iowa Ham Canning manufactured for Gusto a private labeled chopped Ham product under the Gusto's Heartland trademark which trademark was owned by Gusto;

   a)     as part of that course of dealings, Iowa Ham Canning had produced to Gusto's specifications, Gusto labels which were affixed to and were part of the products manufactured by Iowa Ham Canning for Gusto (Exhibit E Page 15 of 32);

**ANSWER:** Tyson admits that Iowa Ham Canning was part of IBP. Tyson is without knowledge at this point as to the remaining allegations and denies the remaining allegations of this paragraph.

b) Iowa Ham Canning submitted that label for approval to the USDA and received approval for that label prior to manufacturing the private labeled products for Gusto;

**ANSWER:** Tyson is without knowledge at this point as to the allegations of this paragraph and denies the remaining allegations of this paragraph.

c) Tyson sold to Gusto a significant quantity of manufacturing equipment from the Iowa Hand Canning Operation (Exhibit E Page 16 to 17 of 32);

**ANSWER:** Tyson admits that it has sold processing equipment to Plaintiff. Tyson denies the remaining allegations of this paragraph.

d) Tyson's Iowa Ham Canning Division continues to promote its private labeling business relationship with Gusto (Exhibit E Page 32 of 32).

**ANSWER:** Tyson is without knowledge at this point as to the allegations of this paragraph and denies the remaining allegations of this paragraph.

19. Tyson has not only have been a supplier of precuts to Gusto and manufactured private labeled products for Gusto, it has been a close competitor to Gusto of finished meat products for many years and both companies exhibit at the same food shows, sometimes having booths located next to each other at such shows (Exhibit E Page 1 of 32).

**ANSWER:** Tyson admits that it has supplied and currently supplies Plaintiff pork products. Tyson also admits that Exhibit E (page 1 of 32) purports to be a photograph from a trade show. Tyson denies the remaining allegations in this paragraph.

20. Based on all of these activities, on information and belief, Tyson knew or should have known about Gusto's adoption of "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" trademarks applied to the various Gusto products for many years.

**ANSWER:** Tyson admits that it was aware of U.S. Registrations Nos. 1,878,749, 1,882,367 and 2,970,688 for the marks ""GUSTO & Design" "GUSTO'S HEARTLAND & Design" and "GUSTO'S HEARTLAND". Tyson is without knowledge or information sufficient to form a belief as to Plaintiff's adoption of the purported marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" for its products and therefore denies the remaining allegations of this paragraph.

21. Gusto uses its trademarks and tradenames in numerous and diverse ways, including:

    a) Gusto applies USDA approved labels to its manufactured products (some representative examples of these labels are Exhibit E Pages 18 to 24 of 32); and

**ANSWER:** Tyson admits that the specific pages of Exhibit E purport to be labels but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

    b) Gusto's products are shipped in boxes that have the Gusto trademark and tradename printed on them and/or have Gusto Packing Company labels affixed to them (Exhibit E Pages 25 to 29 of 32); and

**ANSWER:** Tyson is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

    c) Gusto's trademarks and tradename are used on its product brochures and advertising (Exhibit E Pages 2 to 5 of 32); and

**ANSWER:** Tyson admits that the specified pages are labeled "Product Brochures" but is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

    d) Gusto's trademarks and tradename are used on its website, www.gustopack.com (Exhibit E Pages 6 to 10 of 32); and

**ANSWER:** Tyson admits that Plaintiff claims to use its purported trademarks on its website at www.gustopack.com. Tyson denies the remaining allegations of this paragraph.

e) Gusto's trademarks and tradename are used on its letterhead (Exhibit E Page 30 of 32) and checks (Exhibit E Page 31 of 32).

**ANSWER:** Tyson admits that Plaintiff claims to use its purported trademarks on its letterhead and checks. Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

22. Upon information and belief, on October 24, 2007, Tyson applied to register the mark "¡AL GUSTO!" for beef, chicken and pork in International Class 029, with the PTO, on an intent-to-use basis.

**ANSWER:** Admitted.

23. Upon information and belief, and according to a press release quoting the President and CEO of Tyson, Tyson has begun use, or intends to begin use of the mark "¡AL GUSTO!" on meat products, including pork, beef and chicken, all of which products fall into International Class 029. The products that Tyson is selling and intending to sell under the "¡AL GUSTO!" mark are to be directed to the Hispanic market. A copy of the press release is attached as Exhibit D.

**ANSWER:** Tyson admits that Exhibit D appears to be a copy of its May 15, 2008 press release in "Meat & Poultry." Tyson further admits that according to the press release it was test marketing six chicken products under its "¡AL GUSTO!" brand in Houston and Dallas, Texas and may extend the brand to other markets as well as species, including beef and pork. In addition, Tyson admits that according to the press release these products are intended to deliver convenience to consumers preparing Latin dishes. Tyson denies the remaining allegations of this paragraph.

24. Tyson's use of "¡AL GUSTO!" is without permission of authority of Gusto and this use by Tyson is likely to cause confusion, to cause mistake and to deceive.

**ANSWER:** Tyson admits that is does not have or require permission to use its "¡AL GUSTO!" mark from Plaintiff. Tyson denies the remaining allegations of this paragraph.

25. Tyson's conduct is willful and Tyson's acts of trademark infringement and unfair competition have been committed with the intent to cause confusion, mistake and to deceive.

**ANSWER:** Denied.

## IV. COUNT I

### VIOLATION OF 15 U.S.C. SECTION 1114(1) OF THE LANHAM ACT – INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS

26. Paragraphs 1-25 are incorporated herein by reference.

**ANSWER:** Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

27. Upon information and belief, Tyson heavily promotes its products and brand names. Tyson's current use and anticipated future extensive advertising of the "¡AL GUSTO!" brand name comprises an infringement of Gusto's registered trademarks "GUSTO and design," GUSTO'S HEARTLAND and "GUSTO'S HEARTLAND and design," and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Tyson's goods, through forward confusion and/or as to identity and origin of Gusto's goods through reverse confusion. Gusto has been and is likely to be irreparably harmed by the loss of Gusto's right to control its product identity, corporate identity, and control over its goodwill and reputation for which there is no adequate remedy at law.

**ANSWER:** Tyson admits that it heavily promotes its products and brand names. Tyson denies the remaining allegations of this paragraph.

28. Tyson's substantial course of business dealings with Gusto demonstrate that its infringing activities constitute a willful and wanton infringement of the "GUSTO and design," "GUSTO'S HEARTLAND and design" and "GUSTO'S HEARTLAND" registered trademarks, making this an exceptional case under 15 U.S.C. §§ 1114 and 1117.

**ANSWER:** Denied.

29. By reason of the foregoing acts, Tyson is liable to Gusto for trademark infringement under Lanham Act §32 (15 U.S.C. §1114).

**ANSWER:** Denied.

## V. COUNT II

### FEDERAL TRADEMARK INFRINGEMENT OF COMMON LAW TRADEMARK RIGHTS UNDER LANHAM ACT 43a SECTION 1125(a)

30. Paragraphs 1-25 are incorporated herein by reference.

**ANSWER:** Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

31. Tyson's aforesaid acts use advertising and anticipated future advertising and promotion constitute unfair competition and/or infringement of Gusto's common law trademark rights in the marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" pursuant to Lanham Act §43 (15 U.S.C. §1125(a)), and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Tyson's goods through forward confusion and/or as to the identity and origin of Gusto's goods through reverse confusion. Tyson's unfair competition has caused and will continue to damage Gusto. Gusto has been and is likely to be irreparably harmed by the loss of Gusto's right to control its product identity, corporate identity, and control over its good will and reputation for which there is no adequate remedy at law.

**ANSWER:** Denied.

## VI. COUNT III

### TRADEMARK INFRINGEMENT OF STATE COMMON LAW TRADEMARK RIGHTS

32. Paragraphs 1-25 are incorporated herein by reference.

**ANSWER:** Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

33. Tyson's aforesaid acts constitute infringement of Gusto's state common law trademark rights in the marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND." Tyson's infringement has caused and will continue to damage Gusto and is causing irreparable harm to Gusto for which there is no adequate remedy at law.

**ANSWER:** Denied.

## VII.   COUNT IV

## UNFAIR COMPETITION UNDER STATE AND COMMON LAW

34.   Paragraphs 1-25 are incorporated herein by reference

**ANSWER:**   Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

35.   Tyson's actions discussed herein constitute unfair competition of Gusto's common law rights in the marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND."

**ANSWER:**   Denied.

36.   Continuously since on or about 1972 Gusto has used the mark "GUSTO" and subsequently since on or about 1992 Gusto has used the mark "GUSTO'S and since on or about 1992 Gusto has used the mark "GUSTO'S HEARTLAND" to identify its goods and to distinguish them from those made and sold by others, by, among other things, prominently displaying the marks "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" on the goods, their containers, the displays associated therewith and related catalogs and publications. Such goods and advertising have been distributed throughout the entire United States and including in the trade area where Tyson is doing business. As a result of these sales and advertising by Gusto under the marks, the marks have developed a secondary and distinctive trademark meaning to purchasers in Tyson's trade area. Gusto's marks have come to indicate to those purchasers a meaning of pork, turkey and related goods originating only with Gusto. As a result of this association by purchasers of the marks "GUSTO," "GUSTO'S" and "GUSTO HEARTLAND" with Gusto, Tyson's use of the mark "¡AL GUSTO!" is likely to cause confusion among such purchasers.

**ANSWER:**   Tyson denies that purchasers will associate Tyson's use of the mark "¡AL GUSTO!" with Plaintiff's products under its purported "GUSTO," "GUSTO'S" and "GUSTO HEARTLAND" trademarks and that purchasers will likely be confused by Tyson's use of its mark "¡AL GUSTO!". Tyson further denies that Plaintiff's "GUSTO," "GUSTO'S" and "GUSTO HEARTLAND" purported marks have acquired secondary and distinctive trademark meaning to purchasers in Tyson's trade area. Tyson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

37. Tyson has infringed Gusto's marks as alleged herein with the intent to deceive the public into believing that goods sold by Tyson are made by, approved by, sponsored by or affiliated with, Gusto. Tyson's acts as alleged herein were committed with the intent to pass off and/or palm off Tyson's goods as the goods of Gusto, and with the intent to deceive and defraud the public.

**ANSWER:**   Denied.

38. Gusto is entitled to preliminary and permanent injunctive relief ordering Tyson to cease unfair competition, as well as disgorgement of all of Tyson's profits associated with this unfair competition.

**ANSWER:**   Denied.

## VIII.  COUNT V

### FALSE DESCRIPTION

39. Paragraphs 1-25 are incorporated herein by reference.

**ANSWER:**   Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

40. Tyson's use of the "¡AL GUSTO!" mark is such a colorable imitation and copy of Gusto's trademarks established in the market for meat products that Tyson's use thereof in the context of meat products is likely to create confusion, or to cause mistake, or to deceive consumers as to the origin, sponsorship or approval of Tyson's products.

**ANSWER:**   Denied.

41. Tyson has caused goods to enter into interstate commerce with the designation "¡AL GUSTO!," resulting in a false designation of origin which is likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or association of Tyson with Gusto and as to the origin, sponsorship, or approval of such goods by Gusto. These acts are in violation of 15 U.S.C. §1125(a), in that Tyson has used in connection with goods a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Tyson with Gusto and as to the origin, sponsorship, and approval of Tyson's goods and commercial activities by Gusto.

**ANSWER:**   Denied.

42. Tyson's use of the mark "¡AL GUSTO!" comprises a false description or representation of such business or products under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act).

**ANSWER:** Denied.

## IX. COUNT VI

### COMMON LAW INJURY TO BUSINESS REPUTATION

43. Paragraphs 1-25 are incorporated herein by reference

**ANSWER:** Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

44. Tyson's use of Gusto's trademarks injures and creates a likelihood of injury to Gusto's business reputation because persons encountering Tyson and its products will believe that Tyson is affiliated with or related to or has the approval of Gusto, and any adverse reaction by the public to Tyson and the quality of its products and the nature of its business will injure the business reputation of Gusto and the goodwill that it enjoys in connection with its "GUSTO," "GUSTO'S" and "GUSTO'S HEARTLAND" trademarks.

**ANSWER:** Denied.

## COUNT VII

### VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

45. Paragraphs 1-25 are incorporated herein by reference.

**ANSWER:** Tyson repeats and incorporates its answers to paragraphs 1-25 of the Amended Complaint as if set forth fully herein.

46. By reason of the acts and practices set forth above, Tyson has been and is engaged in deceptive-trade practices or acts in the conduct of a business, trade or commerce, or in the furnishing of services, in violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, 815 I.L.C.S. 510, Sec. 2.

**ANSWER:** Denied.

47.     Tyson's use, from time to time, threatened future use, and claim of ownership of "¡AL GUSTO!" for goods unconnected to Gusto, is holding itself out as an authorized user of the marks when it is not, and is holding its products out as authorized products of Gusto which they are not. Such acts by Tyson have been willful, 815 I.L.C.S. 510, Sec. 3.

**ANSWER:**    Denied.


48.     The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by Tyson.

**ANSWER:**    Denied.


49.     Unless enjoined by the Court under the provisions of Uniform Deceptive Trade Practices Act of the State of Illinois, 815 I.L.C.S. 510, Sec. 3, Tyson will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate irreparable damage to Gusto. Gusto has no adequate remedy at law.

**ANSWER:**    Denied.


## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for failure to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred based upon the doctrines of laches and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred based upon the doctrine of waiver or acquiescence.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Tyson has not infringed the asserted trademark rights or any other rights of Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff has suffered no damages.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's alleged trademarks are not inherently distinctive and have not acquired secondary meaning.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged trademarks are comprised of common descriptive or laudatory terms.

August 8, 2008

Respectfully submitted,

Tyson Foods, Inc..

By:\_\_\_\_/s/ Robert E. Browne_____
One of its attorneys

Robert E. Browne (ARDC# 032 1761)
Michael G. Kelber (ARDC# 623 1033)
Lara V. Klapper (ARDC# 627 7477)
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street, Suite 2200
Chicago, IL  60602-3801
Telephone:  (312) 269-8000
Facsimile:  (312) 269-1747

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the foregoing DEFENDANT'S ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES has been served upon the individuals listed below via the CM/ECF electronic filing service system on this 8th day of August 2008:

    Kevin W. Guynn
    Greer, Burns & Crain, LTD.
    300 S. Wacker Drive, Suite 2500
    Chicago, Il 60606

    John Duggan
    Duggan Law Offices
    181 S. Lincolnway
    North Aurora, Illinois 60542

/s/ Lara V. Klapper

Lara V. Klapper