IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUSTO PACKING CO., INC., | ) | |
| | ) | |
| Plaintiff, Counter-Defendant | ) | |
| | ) | |
| v. | ) | Case No. 1:08-CV-3208 |
| | ) | |
| TYSON FOOD, INC., | ) | |
| | ) | Magistrate Judge Nolan |
| Defendant, Counter-Plaintiff. | ) | |
| _____ | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL ENTRY OF PROTECTIVE ORDER**

**INTRODUCTION**

Defendant / Counter-Plaintiff Tyson Foods Inc. ("Tyson") has moved the Court to enter a protective order including a provision that its in-house counsel, James Roe, be allowed to inspect and obtain copies of documents and other information designated by any party or third party as "Highly Confidential - Attorneys' Eyes Only".  For the reasons set forth below, Plaintiff / Counter-Defendant Gusto Packing ("Gusto") requests that the Court deny Defendant's Motion to Compel as filed, and instead, modify the protective order as suggested below.

**1. THE COURT SHOULD DENY THE MOTION BECAUSE A CAREFUL AND COMPREHENSIVE INQUIRY INTO TYSON'S IN-HOUSE COUNSEL'S DUTIES HAS NOT BEEN UNDERTAKEN.**

In-House Counsel should not be discriminated against solely because of counsel's status.  See U.S. Steel Corp. v. U.S., 730 F.2d 1465 (Fed. Cir. 1984).   In-House Counsel is an officer of the Court and is bound by the same code of professional responsibility and

subject to the same sanctions. Id. However, there exists, "a greater likelihood of inadvertent disclosure by lawyers who are employees committed to remain in the environment of a single company." Id. This, however, is a generalization; a comprehensive inquiry must be undertaken to ascertain the risk of inadvertent disclosure. "Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined . . . by the facts on a counsel-by-counsel basis". U.S. Steel Corp. at 1467-1468.

One factor in determining the risk of inadvertent disclosure of trade secrets is whether in-house counsel is involved in "competitive decision-making." See Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir. 1992). "[A] proper analysis requires a careful and comprehensive inquiry into in-house counsel's actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor that enhances the risk of inadvertent disclosure." AutoTech Technologies limited partnership v. Automationdirect.com, Inc., 237 F.R.D. 405, 408 (N.D. Ill. August 21, 2006). Tyson's motion and attached declaration fail to explain what direct responsibility or authority Mr. Roe has over competitive decisions. From the declaration, the plaintiff must assume that Mr. Roe has some involvement with competitive decisions.

An incomplete form declaration[1] is insufficient to perform a careful and comprehensive inquiry. In his Declaration, Mr. Roe states that his "primary" responsibility is managing litigation. (Declaration of James Roe ¶ 3). However, what other secondary responsibilities that Mr. Roe has are unknown and a mystery to the

---

[1] The declaration submitted by Mr. Roe was clearly not prepared by him since at in paragraph 1 there is a bracketed notation for Mr. Roe to fill in the number of years he has been in practice. As it stands, the declaration is incomplete at least in this regard.

2

Plaintiff. Defendant has stated that Mr. Roe does not "specifically" work with or advise them [Tyson clients] in regard to their business decisions. (Defendant's Motion ¶ 6). Plaintiff is unsure if Mr. Roe "generally" works or advises Tyson clients in regard to their business decisions.

The plaintiff agrees that U.S. Steel Corp. v. U.S and its prodigy should frame the determination of this case. Mr. Roe should not be excluded for the sole reason that he is an in-house counsel. However, U.S. Steel Corp also stands for the notion that Mr. Roe should not be admitted just because he is a member of the bar. A proper inquiry into his duties is warranted. The carefully worded declaration does not exclude the possibility that Mr. Roe is involved to some degree in business decisions by Tyson. At this juncture, the Plaintiff is lacking in facts as to what sort of inadvertent disclosure is possible. Without knowing what responsibilities that Mr. Roe maintains, it is premature to grant him access to highly confidential documents. The Court should deny Defendant's motion as Mr. Roe's duties are unknown at the present.

**2. THE COURT SHOULD DENY THE MOTION BECAUSE THE RISK OF INADVERTENT DISCLOSURE OUTWEIGHS ANY HARM TO THE ABILITY OF TYSON'S IN HOUSE COUNSEL TO MANAGE THE CASE.**

**A. An inadvertent disclosure of confidential information would be very harmful to Gusto.**

Certain information such as pricing information, customer information, and future marketing plans is highly sensitive.[2] Tyson and Gusto not only maintain a customer / client relationship but also a competitive one. Such information is necessarily kept secret to provide a level playing field for both competitors. A single inadvertent disclosure

---

[2] Tyson has already requested identification of specific customers of Gusto, pricing of all Gusto products, and Gusto's five year marketing plan for its products.

3

could ruin a relatively small rival like Gusto.  Gusto is a small fish (300 employees) competing with a whale (over 100,000 employees) of a company such as Tyson.  (For instance see Defendant's FRCP Rule 26(a)(1) disclosures: 79 persons at Tyson that are likely to have discoverable information relevant to the claims).  Among other things, Gusto maintains its position through its brand name and trademarks, intelligent pricing and detailed customer service, not through brute force and economies of scale as Tyson.  Gusto has brought this suit to protect its trademarks, it should also not be required to suffer a risk of inadvertently disclosing its trade secrets and confidential information that allow Gusto to compete with the likes of Tyson.

**B.  The demonstrated need for Tyson's in house counsel to view such material is low or non-existent.**

The confidential information sought by defendants has not been shown to be integral to making a determination or supervising the case.  The controversy in this matter involves trademark infringement by Defendant Tyson.  Information such as individual consumer information or individual product pricing is not required to evaluate the merits of the case.  It is believed that Mr. Roe would not suffer if he did not posses Gusto's particular customer or pricing information.  For example, retained counsel is qualified to ascertain the level of consumer sophistication.  The individual customer names, pricing, and five year business plan information does not need to be seen by Mr. Roe to formulate strategy or oversee the case.  Defendant has not made a showing of the necessity of having Mr. Roe view this specific information and without being able to reference specific documents and other information, it would be premature to do so.

4

Courts have long understood that once the egg is broken there is no putting it back together again. Further, "Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." U.S. Steel Corp. v. U.S., 730 F.2d 1465, 1468 (Fed. Cir. 1984). At present, the risk for inadvertent disclosure is unknown. The potential harm to Gusto is great; the potential disadvantage to Tyson is minimal. The Court should deny the Defendant's motion to compel the protective order as filed.

**3. THE COURT SHOULD ENTER THE FOLLOWING PROPOSALS INTO THE PROTECTIVE ORDER.**

Defendant's motion to enter the protective order as filed should be denied, as it is premature. At this juncture, Tyson has requested that Mr. Roe view all "highly confidential - attorney eyes only" documents and information. The risk of inadvertent disclosure is unknown. Tyson has not demonstrated any compelling need for the information in question to be viewed by Mr. Roe. The proper route the Court should take is to reject the protective order as filed and instead modify the order to include the following safeguards against inadvertent disclosure.

**A. Tyson's in-house counsel be allowed to view documents once they have been found necessary to evaluate the merits of the case.**

The Defendant's motion for a protective order as filed is premature. The highly confidential documents requested so far by Defendant should not be required by in-house counsel to make a determination of the merits of the case. Such documents include but are not limited to Gusto's customer information and sales and marketing strategies. Such

5

information will be readily available to retained counsel who is more than capable of summarizing such information without requiring Mr. Roe to know the particular confidential details.

If a need arises where Mr. Roe must see a particular document in order to make a determination, Defendant can request that specifically identified information be released for disclosure to Mr. Roe. Plaintiff feels that it can work out arraignments with Defendant on a document by document level. This proposal will not prohibit Mr. Roe with his duties of management and supervision of the case, but will drastically limit the possibility of inadvertent disclosure. If the parties cannot agree on a particular document or information, then the issue would be ripe for a determination by the Magistrate Judge as to whether Mr. Roe should be given access to that information.

Granting access to everything now would be premature. Dealing with highly confidential information on a document by document process would allow the minimum of information to be potentially disclosed.

**B. Tyson's In-House Counsel be allowed to view such documents only in the presence of retained counsel at their Chicago Offices.**

The risk for inadvertent disclosure is two-fold. First, Mr. Roe may be involved in business decisions, now or in the future. As such, Mr. Roe may be unable to compartmentalize certain information in his duties to his client. "[O]nce knowledge has been gained, a person cannot perform a prefrontal lobotomy on [himself]." AutoTech at 408. (Quoting Fleming Sales Co., Inc. v. Bailey, 611 F.Supp. 507, 514 (N.D.Ill.1985)).

Second, there is a risk that documents, through no fault of anyone involved, may be disclosed if taken or copied to Mr. Roe's Arkansas office. Defendant may have a protocol that builds a figurative wall around Mr. Roe in his Arkansas office, although

6

none has been described in Mr. Roe's declaration. However, no plan is foolproof; the best way to limit inadvertent disclosures is to limit the potential for slipups. As a safeguard, Plaintiff proposes that no hard or electronic copies of confidential documents be allowed to enter Tyson's corporate offices. Mr. Roe, if he is allowed access to documents or other information may view such at Tyson's outside counsel's office in Chicago. Plaintiff would not insist that Defendant not discuss such documents with in-house counsel, but only that the location of hard and electronic copies be limited to lower the potential risk of inadvertent disclosure.

**C. Tyson's In-House Counsel file an appearance in this Court.**

Finally, as counsel who claims responsibility for management and supervision of this case, Mr. Roe should file an appearance with this Court in order to be bound by a protective order entered by this Court. Mr. Roe may be an officer of the court, but he is not accountable to this particular Court, not admitted in Illinois, and is not subject to any potential sanctions or rules of professional conduct that may be issued by this Court.

**CONCLUSION**

Defendant's motion is premature, and the protective order for this case should limit disclosure of highly confidential information to outside counsel of record.

Respectfully submitted:

                                              By:      /s/ Kevin W. Guynn
                                                          Kevin W. Guynn
                                                          Attorney for Plaintiff

GREER, BURNS & CRAIN, LTD.
300 South Wacker Drive
Suite 2500
Chicago, Illinois 60606
Telephone:   (312) 360-0080
Facsimile:    (312) 360-9315

John Duggan
DUGGAN LAW OFFICES
181 S. Lincolnway
North Aurora, Illinois 60542

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL ENTRY OF PROTECTIVE ORDER** has been forwarded to Attorney for Defendant, at the following address:

> Robert E. Browne (rbrowne@ngelaw.com)
> Michael G. Kelber (mkelber@ngelaw.com)
> Lara V. Hirshfeld (lhirshfeld@ngelaw.com, kfreeh@ngelaw.com)
> Neal, Gerber & Eisenberg LLP
> Two North LaSalle Street
> Suite 2200
> Chicago, IL 60602

by e-mail through ECF pursuant to LR 5.2 and by agreement between the parties on this 8th day of August, 2008

                                                     /s/  Kevin W. Guynn
                                                   Kevin W. Guynn
                                                   Attorney for Defendant